

**FILED**

APR 0 3 2012

PATRICK E. DUFFY, CLERK

By_____
DEPUTY CLERK, MISSOULA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, ) | CV 09-160-M-DWM |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| PAUL BRADFORD, Supervisor of the ) | |
| Kootenai National Forest, JANE ) | |
| COTTRELL, Acting Regional Forester of ) | |
| Region One of the U.S. Forest Service, ) | |
| UNITED STATES FOREST SERVICE, an ) | |
| agency of the U.S. Department of ) | |
| Agriculture, and UNITED STATES FISH ) | |
| & WILDLIFE SERVICE, an agency of the ) | |
| U.S. Department of Interior, ) | |
| ) | |
| Defendants. ) | |

## I. Introduction

The United States Forest Service ("Forest Service") and United States Fish

& Wildlife Service ("Fish & Wildlife") (collectively "the agencies") move to

dissolve the injunction issued on the Little Beaver Hazardous Fuels Reduction

Project ("Little Beaver Project" or "the Project"). *Alliance for the Wild Rockies v.*

*Bradford*, 720 F. Supp. 2d 1193, 1222 (D. Mont. June 29, 2010). The agencies

maintain that lifting the injunction is appropriate because they have complied with

the remand order by completing a revised Environmental Assessment ("EA")

addressing the inadequacies of the original EA. Alliance for the Wild Rockies

("Alliance") on the other hand opposes the motion, insisting that the revised EA

fails to address all of the deficiencies identified in *Alliance for the Wild Rockies*.

For the reasons set forth below, the agencies' motion is granted, and the injunction

is dissolved.

## II. Factual Background

On June 29, 2010, a fuel reduction known as the Little Beaver Project,

designed to protect privately owned property adjacent to federal lands near Trout

Creek, was enjoined. *Alliance for the Wild Rockies*, 720 F. Supp. 2d at 1222. The

injunction stemmed from contradictions in the administrative record regarding

grizzly bear presence in the Project area. For example, the Biological Assessment

concluded that grizzlies were present in the Clark Fork Bears Outside Recovery

Zone ("Clark Fork BORZ"),[1] an area that included the Project area, while other

portions of the EA concluded that bears were not present in the Project area. *Id.* at

---

[1] The terms "BORZ" and "reoccurring use polygon" are used interchangeably in the
administrative record to refer to the areas outside the Cabinet-Yaak Recovery Zone that contain
grizzlies.

1215. The natural inference drawn from these contradictions was that consideration of the grizzly bear issues by the agencies was arbitrary and capricious under the Endangered Species Act ("ESA"),[2] the National Environmental Policy Act ("NEPA"),[3] and the National Forest Management Act ("NFMA").[4]

After the Forest Service filed the original Project proposal, but prior to Alliance filing its complaint in this matter, Forest Service and Fish & Wildlife representatives engaged in talks about removing the Project area from the Clark Fork BORZ. During the summer and fall of 2009, the agencies met to update the Clark Fork BORZ boundaries. AR–1–40.1–09:6.[5] Months later, based on the absence of reliable grizzly bear sightings from 1995 to present and the lack of other evidence of grizzly bear habitation (tracks, scat, etc.), the agencies dropped three areas, including the Project area, from the Clark Fork BORZ. *Id.* at 6, 36–37, 40.

---

[2] 16 U.S.C. § 1533 et seq. (2006).

[3] 42 U.S.C. § 4321 et seq. (2006).

[4] 16 U.S.C. § 1600 et seq. (2006).

[5] Citations to the Administrative Record are denoted as AR–1–[volume number]–[document number]:[PDF page number]. For purposes of clarity, the Court's citations refer to the administrative record as denoted in the Administrative File Index (doc. 64–1 at 3–32). This clarification is necessary because the electronic administrative record provided to the Court on disk does not match the citations that are used by the parties and the organization reflected in the Administrative File Index. The Court was able, however, to locate on the disk all the administrative documents referred to by the parties in their briefs.

The discussions and decision to update the BORZ boundaries were not before the Court in the *Alliance for the Wild Rockies* litigation.

This information was incorporated in a revised EA. The revised EA concluded that the Project (1) complied with the ESA because there were no grizzly bears in the Project area, so there would be no "take" of grizzlies due to Project activities such as road building and helicopter logging, AR–40.1–04:135– 136; that the project (2) complied with NEPA by articulating that it was proper to analyze the cumulative effects of the Project on a project level instead of a forest-wide level because of the Project's isolated location and its distance from the nearest confirmed grizzly habitat, *id.* at 135; and that the project (3) complied with the NFMA by concluding that the Project area is not located in a Management Situation 1, 2, or 3 area, AR–1– 40.1–12:12. Given the revised EA's conclusions, the Forest Service insists that a change in circumstances—their compliance with the remand order—means the injunction should be dissolved.

Alliance takes the position that removal of the injunction is mistaken and unwarranted. Alliance concedes that the revised EA resolved the NFMA violation found in *Alliance for the Wild Rockies*. (Doc. 70 at 10.) But, with respect to the ESA and NEPA deficiencies, Alliance claims that the doctrines of res judicata and collateral estoppel bar the Forest Service from abandoning its earlier position and

4

asserting that grizzly bears are not in the Project area now. Alliance maintains that the Forest Service's conclusion—that there are no grizzly bears present in the Project area—is arbitrary and capricious when considered holistically in view of the entire litigation record. Finally, Alliance argues alternatively that even if there are no grizzly bears in the Project area, the injunction is still warranted because the absence of grizzly bears shows that the Service breached its duty to protect an endangered species.

Alliance offers four affirmative propositions to show that grizzlies are still in the Project area. First, it invokes a 1996 Forest Service publication entitled "Beaver Creek Physiographic Area Landscape Assessment: An analysis of the biological and cultural ecology of the Beaver Creek Physiographic Area." (*See* Doc. 70 at 5–6 (citing AR–1–20–27:172, 158–159).) The 1996 Landscape Assessment shows that the Little Beaver area was historically inhabited by grizzlies, AR–1–20–27:172, but then goes on to reflect the rapid drop in the grizzly population throughout the 20th Century, *id.* at 158–159.

Second, Alliance relies on the 2008/2009 "Travel Analysis Report: Beaver Creek Travel Analysis," AR–1–35–02, a Forest Service assessment of the impact of project roads on the area's wildlife and habitat, *id.* at 5. A single sentence in that 59-page document notes: "Grizzly bear, gray wolf, lynx, and bald eagle, protected

under the Endangered Species Act, utilize this area." *Id.* at 12.

Third, Alliance incorporates Forest Service records that indicate there were three reported grizzly bear sightings in the Beaver Creek drainage between 1995 and 2010. (Doc. 70 at 6 (citing AR–1–6–41).)

Finally, Alliance summons the "Bitterroot Mountains Bear DNA and Camera Survey: 2008–2009," (hereinafter "2008–2009 Bear DNA and Camera Survey") AR–1–40.3–23, a survey that used "barbed-wire hair stations and motion-triggered digital cameras" in an attempt to establish the presence of grizzly bears in the area. *Id.* at 3. While the survey did not "detect any grizzly bears in the study area," its disclaimer is banked on for its negative pregnant: "Our inability to detect grizzly bears does not mean they are absent from the study area. Grizzly bear mortalities within or adjacent to . . . the Clark Fork Study Area suggest grizzly bears at least occasionally use these areas." *Id.* at 11.

The Forest Service reasons that the record supports its finding that there are no grizzlies in the Project area. First, while it acknowledges there were three reported bear sightings between 1995 and 2010, it insists there was only one credible sighting—in 1995. (Doc. 71 at 4 (citing AR–1–40.3–14:8).) Grizzly bear sightings are rated on a scale of 1 to 5, with 5 being the most credible. The 1996 and 2003 sightings were rated below a 4 and so they were excluded from the

revised EA. *See* AR–1–40.1–4:131–132 (explaining that the Forest Service and the Fish & Wildlife Service determined that only the 1995 grizzly sighting was credible); *see also id.* at 134 (table). Second, the Service bolsters its position by relying on the lack of "other evidence of actual occupation." (Doc. 71 at 5.) For example, Forest Service employees "spent close to 6,500 man hours in the Project Area between 2007 and 2009 and found no evidence of grizzly bears." (*Id.* (citing AR–1–40.3–7 and AR–1–40.3–21).) The Service insists the results of the 2008–2009 Bear DNA and Camera Survey's results support "the agencies' determination that the area is not one of recurring use because the survey did not find any evidence of actual occupation." (Doc. 71 at 6–7 (citing AR–1–40.3:23).)

### III. Analysis

#### A.    Dissolving the Injunction

##### 1.    Legal Standard

Rule 60(b)(5) of the Federal Rules of Civil Procedure permits a litigant "to obtain relief from a judgment or order if 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009) (brackets in original) (quoting Fed. R. Civ. P. 60(b)(5)). Rule 60(b)(5) codified courts' inherent equity power to modify an injunctive order when circumstances make continued enforcement of the injunction inequitable. *See*

*Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999); *see also United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (Cardozo, J.).

Supreme Court authority teaches that a party moving to dissolve an injunction must establish "'a significant change either in factual conditions or in law' renders continued enforcement" inequitable. *Horne*, 129 S. Ct. at 2593 (quoting *Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 384 (1992)). It is an abuse of discretion if, after the moving party carries this burden, a court "refuses to modify an injunction . . . in light of such changes." *Horne*, 129 S.Ct. at 2593 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)). While these propositions have their genesis in "institutional reform cases," the Ninth Circuit applies them to "all Rule 60(b)(5) petitions brought on equitable grounds." *Bellevue Manor*, 165 F.3d at 1257.

## 2.    Res Judicata or Claim Preclusion

The first prong of Alliance's challenge is that res judicata keeps the Forest Service from raising issues not raised originally in *Alliance for the Wild Rockies*. The Service counters that res judicata principles are inapplicable where it is asking the Court to modify an injunction due to changed circumstances. The Forest Service is correct.

Most courts, including the Ninth Circuit, agree that res judicata does not

8

apply to Rule 60(b)(5) motions to modify or dissolve injunctions. *See Bellevue Manor*, 165 F.3d at 1252 ("Rule 60(b)(5), . . . creates an exception to the doctrine of claim preclusion"); James Fisher, *Understanding Remedies* § 36.2 at 318, 320 (LexisNexis, 2d ed., 2006) ("The doctrine of res judicata does not bar a court from modifying a previously entered injunction."); *Kock v. Govt. of Virgin Is.*, 811 F.2d 240, 244–245 (3rd Cir. 1987) (reasoning that res judicata principles do not apply to injunctive relief because "[t]he power of a court of equity to modify the prospective effect of its decree is well established and is explicitly stated in [Rule 60(b)(5)].").  Res judicata is inapplicable here.

### 3. Collateral Estoppel or Issue Preclusion

The next prong of Alliance's legal envelopment urges the Court to hold that the doctrine of collateral estoppel bars the Forest Service from relitigating *Alliance for the Wild Rockies*' "findings regarding whether the Project will affect grizzly bears." (Doc. 70 at 12.) This charge is met by the counter proposition that collateral estoppel is inapplicable because the adequacy of the *revised* EA is beyond the issues in *Alliance for the Wild Rockies*; that case only addressed the *original* EA. Here again, the Forest Service is right.

Under the doctrine of collateral estoppel or issue preclusion, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes

9

relitigation of the same issue on a different cause of action between the same parties." *Montana v. United States*, 440 U.S. 147, 153 (1979). The Ninth Circuit looks to the collateral estoppel doctrine only where the party claiming preclusion establishes:

    (1)    the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated;

    (2)    the first proceeding ended with a final judgment on the merits; and

    (3)    the party against whom collateral estoppel is asserted was a part or in privity with a party at the first proceeding.

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 880 (9th Cir. 2000). In this case, the first element is dispositive: The Forest Service is not attempting to relitigate an "issue" decided in *Alliance for the Wild Rockies*. Our circuit strictly construes what "issue" was decided in a previous proceeding. *See e.g. Hydranautics*, 204 F.2d at 885–887 (rejecting collateral estoppel claim because while previous lawsuit's antitrust element—objectively baseless—and the current lawsuit's malicious prosecution element—without probable cause—were "essentially the same," they were not "identical").

Alliance insists the issues here are "identical" to *Alliance* because in *Alliance for the Wild Rockies* the order found that the Little Beaver Project is located in grizzly bear habitat. That determination, Alliance argues, prevents the Forest Service from now arguing that there are no grizzly bears in the area.

10

Alliance makes too much ado in its reading of *Alliance for the Wild Rockies*.

There, the issue was whether the Forest Service's original EA complied with

federal law. *Alliance for the Wild Rockies*, 720 F. Supp. 2d at 1204–1205. The

order made no factual determination about the actual presence of grizzly bears.[6]

Rather, *Alliance for the Wild Rockies* determined that given the administrative

record, it was arbitrary and capricious for the Forest Service to conclude both

that the Project would displace bears and that no bears were present in the

Project area. *Id.* at 1213, 1215. While collateral estoppel would preclude the

Forest Service from relitigating whether the original Little Beaver Project EA

complied with federal law, it does not keep the Forest Service from submitting a

new EA and defending its conclusions as being legally compliant.

**B.    The revised EA's compliance with the Administrative Procedures Act**

The Forest Service reasons that "changed circumstances" have altered the

need for the existing injunction. It believes that because the revised EA concludes

"there are no grizzly bears in the Project Area," the Project will have "no effect" on

grizzly bears either through road construction or helicopter logging. (Doc. 66 at

11). Alliance sees the situation differently and takes the position that the

---

[6] In the pending motion, the Court is again not deciding whether there are grizzly bears in the Project area. Rather, it is deciding whether the revised EA complies with federal law.

conclusion that there are no bears in the Project area was, and is, arbitrary and capricious.

## 1. The Forest Service's conclusion is not arbitrary and capricious because it is not a "clear error of judgment."

Whether the injunction should be dissolved under Rule 60(b)(5) depends on whether the Forest Service's conclusion that grizzly bears are not present in the Project area is arbitrary and capricious under the APA. 5 U.S.C. § 706(2)(A); *see also Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (applying the APA's arbitrary and capricious standard to determine whether a district court abused its discretion in denying an injunction against the Forest Service). Under the APA, "[t]he arbitrary and capricious standard is highly deferential, presuming the agency action to be valid and requires affirming the agency action if a reasonable basis exists for its decision." *Kern Co. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal brackets and quotation marks omitted).

In *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), the Supreme Court explained the substance of the arbitrary and capricious standard of review:

> The court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although the inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.

12

The court is not empowered to substitute its judgment for that of the agency.

(Internal citations omitted.)

*Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989), clarified how reviewing courts are to apply this standard when there is conflicting information about the environment impacts of a project. The proper inquiry is not whether the court or "another decisionmaker might have reached a different result," but whether the agency has committed "a clear error of judgment." *Id.* at 385. Where experts employed by the agency reasonably disagree with the conclusions of contradictory studies, the agency has not committed a clear error of judgment. *Id.* at 383–384.

Here, the Forest Service did not act in an arbitrary and capricious manner as measured by the standard set forth in *Citizens to Preserve Overton Park* and *Marsh.* The Service relies on its own data and experts to conclude that currently there are no grizzly bears in the Little Beaver Project area, and while there is some evidence contrary to this conclusion, there is also evidence that supports the conclusion, and the Forest Service's interpretation of that evidence is not a clear error of judgment. Notably, the Forest Service has inter-agency support for its position—Fish & Wildlife agrees that the lack of credible grizzly sightings or other

evidence of grizzly occupation warranted dropping the Project area from the Clark Fork BORZ. In *Marsh*, inter-agency support was sufficient to uphold an agency decision even though it was contradicted by two separate studies. 490 U.S. at 385 (reasoning that while the decision to reject the information may have been "disputable" it was not "arbitrary or capricious"). While another reviewer could have come to a different conclusion in analyzing the available information, the Forest Service's conclusion is not a "clear error of judgment."

Significantly the Forest Service's current position on the Project area's inclusion in the Clark Fork BORZ is different from its position in the original EA—the area was included in the 2002 BORZ delineation and removed from the 2010 BORZ delineation. AR–1–40.1–09:6. The APA insists that an agency provide a "reasoned explanation" why it has changed its mind when "its new policy rests upon factual findings that contradict those which underlay its prior policy . . . ." *Fed. Commun. Commn. v. Fox TV Stations*, 129 S. Ct. 1800, 1811 (2009) (upholding FCC's change in policy from punishing only the broadcast of indecent words which are used repeatedly to punishing the broadcast of a single expletive); *see also Butte Env. Council v. U.S. Corps of Engins.*, 620 F.3d 936, 946 (9th Cir. 2010) (noting that "agencies are entitled to change their minds" so long as they follow the proper procedures).

14

In this case, the record provides a "reasoned explanation" for the Forest Service's changed position. Even before the Alliance lawsuit, the agencies recognized that the 2002 Clark Fork BORZ boundaries were "drawn broadly" and included areas that were no longer occupied by grizzlies. AR–1–40.1–6. In support of this conclusion, the agencies noted that there had been neither any credible grizzly sightings nor evidence of grizzly habitation (tracks, scat, etc.) in the area since 1995. *Id.* at 10; *see also* AR–1–40.3–10:5; AR–1– 40.1–1:6. Moreover, Forest Service personnel spent roughly 6,500 man hours in the Project area without a single grizzly bear sighting. AR–1–40.3–7 and AR–1–40.3–21. And the 2008–2009 Bear DNA and Camera Survey failed to "detect any grizzly bears in the study area." AR–1–40.3–23:10.

The Forest Service has met its remand obligation by explaining that the contradictions in the original EA were due to the Project area being included in the 2002 Clark Fork BORZ and looking to agency records that show there have been no credible grizzly bear sighting since 1995. This case exemplifies the situation where "contradictory rationales that sometimes appear in the course of lengthy and complex administrative decisions," require only that the agency clarify its decisionmaking thought-process on remand. *Nat'l Ass'n. of Homebuilders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007).

15

**2. The Forest Service's conclusion is not arbitrary and capricious because it does not run counter to all the evidence in the record or the best available science, it is not the result of the agencies' failure to consider an important aspect of the problem, and it is not implausible.**

Alliance claims that the Forest Service's conclusion regarding the presence

of grizzlies runs afoul of *Motor Vehicle Manufacturers Association of the United*

*States v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29 (1983)

(hereinafter "*State Farm*"). There, the Supreme Court stated that an agency

decision is arbitrary and capricious if the agency

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* at 43.

First, Alliance asserts that the Forest Service's conclusion that there are no

grizzly bears in the Project area is counter to all of the evidence in the record

regarding grizzly bear presence in the Beaver Creek drainage. Ironically, the

proposition is counter to the record. There is significant evidence in the record to

support the Forest Service's conclusion that grizzlies are no longer present in the

Project area—there had not been a credible grizzly sighting or evidence of grizzly

16

habitation in the area since 1995, Forest Service employees did not find evidence of grizzly presence during 6,500 hours of work in the area, and a recent survey failed to detect the presence of any grizzly bears in the area. While Alliance is at liberty to argue in opposition to the Service's decision and reasoning, it is still bound by the record.

Second, Alliance claims that the Forest Service's decision runs counter to the best available science in the record and that it fails to consider important aspects of the problem. Under the ESA, agency action must be based on "the best scientific and commercial data available." 16 U.S.C. § 1536(a)(2). The purpose of the best science requirement "is to ensure that the ESA not be implemented haphazardly, on the basis of speculation or surmise." *Bennett v. Spear*, 520 U.S. 154, 176 (1997). When there are differing views as to the impact of an agency action on a protected species, however, an agency has "discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Lands Council v. McNair*, 537 F.3d 981, 1000 (9th Cir. 2008) (en banc). That is seemingly the case here.

The Ninth Circuit directs district courts to stay out of scientific debates. The Ninth Circuit took *Lands Council* "en banc to clarify some of our environmental jurisprudence with respect to our review of the actions of the United States Forest

Service." *Id.* at 984. The unanimous court noted that the Circuit's jurisprudence with respect to scientific conclusions had, "at times, shifted away from the appropriate standard of review . . . ." *Id.* at 988. Courts were admonished not to act as "scientists" by instructing the Forest Service on how to "validate its hypotheses regarding wildlife viability," choosing "among scientific studies" to determine if the Forest Service has complied with federal law, or "order[ing] the agency to explain every possible scientific uncertainty." *Id.* at 988. The Circuit concluded that the judiciary's "proper role is simply to ensure that the Forest Service made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Id.* at 993 (quoting *Marsh*, 490 U.S. at 378).

The crux of Alliance's position seems to be that the Forest Service should have to conduct additional on-the-ground studies before concluding that there are no grizzlies in the Project area. (Doc. 70 at 21.) *Lands Council* rejected such an approach. 537 F.3d at 990–993 (unanimously overruling precedent requiring the Forest Service to "demonstrate the reliability of its scientific methodology" with "on the ground analysis"). Alliance also suggests that the Forest Service should not be able to use the 2008–2009 Bear DNA and Camera Survey to support its position because the survey warns readers that the survey does not prove the absence of grizzly bears in the area. That argument would have legs if the Forest

Service relied solely on the survey. The study's conclusion, and caveat, about the presence of grizzly bears in the area is one piece of evidence used to show that its conclusion is not a "clear error of judgment." Agencies have the "discretion to rely on their own qualified experts" in weighing the importance and conclusions of scientific studies. *See Lands Council*, 537 F.3d at 1000.

The Forest Service did not make a "clear error of judgment," *Marsh*, 490 U.S. 383–384, by asking the Court to "defer to a coin flip," (doc. 70 at 21 (quoting *Greater Yellowstone Coalition v. Servheen*, 665 F.3d 1015, 1028 (9th Cir. 2011)).) Instead it offered a reasoned choice backed up by the record. The Forest Service's conclusion that grizzly bears are not present does not run counter to the best scientific evidence as the record shows.

The final thrust of this aspect of Alliance's argument is that the agencies' conclusion that grizzlies are not in the Project area is arbitrary because it is implausible. Alliance reasons it would be implausible for grizzlies, a wide-ranging, quick-moving species, not to use or visit an area only two miles from the Cabinet-Yaak Recovery Zone, a place that has grizzlies. The Forest Service agrees that the Project area is only two miles away from the Recovery Zone, but it insists that geographical and human barriers have likely kept grizzly use out of the area.

Here, the Forest Service's conclusion is not so implausible that it violates

*State Farm*'s holding. Terrain, water barriers, human buildings, and roads could make the Project area unoccupied by grizzlies. The Project area is also within close proximity to private land, the Clark Fork river, and Highway 200. AR–1–40.1–2:7. The Service's "difference in view" as to the likelihood of grizzlies using or visiting the area is likely "a product of agency expertise." *State Farm*, 463 U.S. at 43. Thus, the Forest Service's conclusion about bear use is not arbitrary and capricious under the "implausible" prong of *State Farm*.

## C. The Cumulative Effects of the Little Beaver Project

The Forest Service's failure to state in the original EA why it was appropriate to analyze the Project's cumulative environmental effects on the Project level instead of forest-wide level violated NEPA and led, in part, to enjoining the Project. *Alliance for the Wild Rockies*, 720 F. Supp. 2d at 1220. The Ninth Circuit requires that the Forest Service give reasons that support its decision "to look only at the BMU level when analyzing cumulative effects." *Id.* (citing *Selkirk Conservation Alliance v. Forsgren*, 336 F.3d 944, 960 (9th Cir. 2003)). Importantly, the Circuit views NEPA as not requiring a cumulative impact analysis when the agency has reasonably concluded that there will be no negative impact in the project area. *See N.W. Envtl. Advocates v. Nat'l Fisheries Serv.*, 460 F.3d 1125, 1140 (9th Cir. 2006) (reasoning that because the agency determined that the project

20

would not increase the salinity in the project area, NEPA did not require the agency to analyze the cumulative impacts).

The Forest Service has complied with the remand order concerning cumulative effects analysis. In part it has done so by explaining why its Project/BMU level of analysis is proper. In the revised EA, the Service states that it limited its analysis of the "cumulative effects" to the Project level (instead of forest-wide level) because it is roughly the size of traditional BMUs and its size (approximately 56,000 acres) makes it "large enough that activities occurring outside of the drainage would be unlikely to result in additive effects" on the grizzly bear population. AR 1–40.1–004:135. The Forest Service also reasons that its BMU-level analysis is sufficient because the Project is two miles away from "the nearest occupied [grizzly] habitat and there are no project-related activities that could result in effects to bears in those areas." *Id.* Moreover, because of its reasonable conclusion that grizzly bears are not present, the cumulative impact of the Project on grizzly bears outside the Project area is not required under *N.W. Environmental Advocates.* The Forest Service has adequately explained its use of BMU-level analysis.

**D. Alliance's Alternative Claims**

Alliance argues in the alternative that if there are no grizzlies bears in the

21

Project area, the Forest Service has committed an "unpermitted take" in violation of

NFMA and ESA. From this proposition, it reasons that the injunction should

remain in place. The essence of the proposition would shift the management

questions of the day to the courts and away from the agencies.

Courts are not free to review all agency action or inaction. The APA grants

judicial review only of "final agency actions." 5 U.S.C. § 704; *see also Franklin v.*

*Mass.*, 505 U.S. 788, 796 (1992) ("The APA provides for judicial review of 'final

agency action for which there is no other adequate remedy in a court.'" (quoting 5

U.S.C. § 704)). The Ninth Circuit has interpreted § 704 to preclude judicial review

when the plaintiff fails to "point[] to a particular agency action . . . ." *City of Los*

*Vegas v. Clark Co.*, 755 F.2d 697, 704 (9th Cir. 1984); *see also Scott v. City of*

*Hammond*, 741 F.2d 992, 995–996 (7th Cir. 1984) (holding that complaint "failed

to state a claim for judicial review of agency action" because the complaint "d[id]

not inform the court or the parties as to what agency action is to be reviewed").

Alliance's challenge to current grizzly management in the Little Beaver

Project area fails to identify a "final agency action" under the APA. The APA

requires Alliance to identify what agency action it believes unlawfully constituted a

"take" of grizzlies. The action could not be the original Little Beaver Project or its

attendant EA because *Alliance for the Wild Rockies* enjoined that Project, 720 F.

22

Supp. 2d at 1222. On the other hand the revised Little Beaver Project or its EA can not be the "take" action because that project has not been implemented.

Under the plain language of § 704 and *City of Los Vegas*, the argument is "insufficient to state a claim for judicial review of agency action." 755 F.2d at 704.

## V. Conclusion

The Forest Service complied with the remand requirements of *Alliance for the Wild Rockies* by addressing the contradictions in the project proposal concerning the presence, or absence, of grizzly bears in the Project area. Thus, it is inequitable for the injunction to remain in place in light of the agencies' remand process.

Procedurally, the Forest Service is not estopped from defending its conclusion that grizzly bears are not present in the Project area. Res judicata principles do not apply to Rule 60(b)(5) motions, and collateral estoppel principles do not apply because the *Alliance for the Wild Rockies* decision did not affirmatively decide that grizzly bears are present in the Project area. On the merits, the Forest Service's conclusion that no grizzlies are present in the Project area is not arbitrary or capricious because it rests on information that rationally supports that conclusion. Finally, Alliance's claim that the injunction should stand if there are no grizzlies left in the Project area because the Forest Service has failed

protect the endangered species is rejected because that claim fails to identify, or challenge, a "final agency action."

IT IS HEREBY ORDERED that the agencies' motion to dissolve the injunction against the Little Beaver Project (doc. 65) is GRANTED, and the injunction is hereby dissolved.

Dated this 3rd day of April, 20112

16:17 pm

Donald W. Molloy, District Judge
United States District Court

24